# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JONI J. EIDSON, | ) |
|     Plaintiff, | ) |
| v. | ) No. 06-0454-CV-W-FJG |
| | ) |
| MIDWEST VET. SUPPLY COMPANY, | ) |
|     Defendant. | ) |

## ORDER

Pending before the Court are (1) Defendant Midwest Vet Supply Company's Motion to Dismiss Plaintiff's Complaint (Doc. No. 7) and (2) Plaintiff's Motion to for [sic] Leave to Amend Complaint to Add an Additional Count (Doc. No. 16). Each will be considered below.

**I.   Background**

Plaintiff filed her complaint in this Court on June 6, 2006 (Doc. No. 1). Plaintiff's brief, seven-paragraph original complaint alleged, in short, that (1) plaintiff is over 18 years of age and a domiciliary of Nebraska; (2) defendant is a Missouri corporation; (3) plaintiff "was to preform [sic] work at the Blue Springs, Jackson County, Missouri office of the Defendant"; (4) plaintiff's "cause of action is based on a violation of the Missouri Human Rights Act, Mo. Rev. Stat. Chapter 213"; (5) plaintiff filed her charge of discrimination (attached as an exhibit to plaintiff's Complaint) with the Missouri Commission of Human Rights ("MCHR") on August 2, 2005[1]; (6) plaintiff received her Notice of Right to Sue

---

[1]From plaintiff's charge of discrimination, it appears that plaintiff is making a claim of sex discrimination, alleging that defendant offered her a job as a sales representative, but withdrew its offer once the defendant learned that she had a 9-year child. Plaintiff claims she was informed of this decision as she was moving from Nebraska to Missouri. Plaintiff claims she was treated disparately because she is a female with small children, and believes that the person given her job was either a male or a female without small

(attached as an exhibit to plaintiff's Complaint) from the MCHR after March 13, 2006; and (7) plaintiff has suffered damages "[a]s a direct and proximate result of the aforementioned discrimination," including loss of wages and benefits, emotional distress, attorney fees, and litigation expenses. Plaintiff prays for judgment including money damages for lost wages and benefits, attorney fees, litigation expenses, court costs and such other sums as are justified under the facts and the law. See Doc. No. 1. Notably, this prayer for relief does not mention emotional distress damages.

On July 18, 2006, plaintiff filed her first amended complaint (Doc. No. 4). Her first amended complaint is similar to her original complaint, with the only substantive difference being a notation that her damages "will exceed $75,000.00." See Doc. No. 4, ¶ 8.

On August 7, 2006, defendant filed its motion to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 8(a). See Doc. No. 7. Defendant argues that (1) plaintiff has not sufficiently pled that the parties are of diverse citizenship or that the amount in controversy exceeds $75,000; (2) plaintiff cannot prove that her claim against defendant is worth over $75,000; and (3) plaintiff's complaint does not constitute a short and plain statement of the claim showing that the pleader is entitled to relief, pursuant to Fed. R. Civ. P. 8(a).

After briefing of the motion to dismiss was complete, plaintiff filed a motion for leave to amend complaint to add an additional count for fraudulent misrepresentation, stating that she learned for the first time through reviewing defendant's motion to dismiss that defendant misrepresented the amount of money she would earn at defendant's company, thereby fraudulently inducing her to quit her employment with the U.S. Postal Service and move to Missouri. See Doc. No. 16.

## II. Defendant's Motion to Dismiss (Doc. No. 7)

### A. Defendant's Facial Challenge to Plaintiff's Allegations of Diversity Jurisdiction

---

children.

Defendant argues that plaintiff failed to properly allege the basis for this Court's jurisdiction over her action. In a "facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993).

First, defendant states that plaintiff does not allege the citizenship of the parties; instead, plaintiff has alleged that she is domiciled in Nebraska, and that defendant is a Missouri corporation with an office in Jackson County, Missouri. In response, plaintiff states that domicile and citizenship are synonymous under 28 U.S.C. § 1332, and that corporations are deemed to be the citizen of the state in which they are incorporated. Although plaintiff's complaint is not a model of clarity on this point, the Court finds that plaintiff has adequately alleged that she and defendant are citizens of different states. Defendant's point as to this issue is denied.

Second, defendant states that plaintiff has not adequately pled that the amount in controversy exceeds $75,000, as she did not include a demand for an amount exceeding $75,000 in her original complaint. Defendant states that this Court must consider plaintiff's original complaint as to this issue, not her amended complaint in which she alleges her damages "will exceed $75,000." Defendant is incorrect as to this point of law. Although failure to allege the jurisdictional amount renders the complaint defective, a plaintiff may amend the complaint to avoid dismissal of the action. See Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3702. Accordingly, as plaintiff alleged in her first amended complaint that the amount in controversy exceeds $75,000, defendant's facial challenge to this Court's jurisdiction will be denied.

B. Defendant's Factual Challenge to Diversity Jurisdiction

Defendant next argues that, regardless of what she has alleged, plaintiff cannot demonstrate that her claim against defendant is worth over $75,000. This is a Rule

3

12(b)(1) challenge to the factual truthfulness of plaintiff's jurisdictional allegations. In a factual challenge, "the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citing Land v. Dollar, 330 U.S. 731, 735 n. 4 (1947)). To the extent that jurisdiction is challenged on the basis of the facts of the case, a less exacting standard of decision is applicable than would be applicable to judgment under Rule 56. Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990). No presumption of truthfulness attaches to a plaintiff's allegations relating to subject matter jurisdiction. Titus, 4 F.3d at 593 n.1. The existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims. Titus, 4 F.3d at 593. The Court may resolve any factual dispute bearing on subject matter jurisdiction through affidavits, deposition testimony, or an evidentiary hearing. Id. Moreover, a party who invokes jurisdiction carries the burden of proof on jurisdictional issues. That burden never shifts, even when facts must be resolved by the court to decide jurisdictional challenges. Osborn, 918 F.2d at 730; Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-61 (1992); Boyle v. Anderson, 68 F.3d 1093, 1100 (8th Cir. 1995), cert. denied, 516 U.S. 1173 (1996).

"[A] complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" Kopp v. Kopp, 280 F.3d 883, 884 (8th Cir. 2002) (citing Larkin v. Brown, 41 F.3d 387, 388 (8th Cir. 1994)). "The district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000." Id. at 885.

In plaintiff's charge of discrimination, plaintiff asserts that she was "to receive $40,000 per year and the area at one time produced $100,000 in commissions." Defendant states, "It appears that Plaintiff is asserting in a roundabout fashion that her lost wages

4

would total over $140,000." See Doc. No. 8, p. 6. Defendant states that plaintiff's assertions are incorrect, and provides the affidavit of Sherrie Phelps, defendant's Manager, noting that plaintiff was told that she would earn between $30,000 and $40,000 per year for a probationary period in the first six months of her employment (or, $15,000 to $20,000 in the six-month period from March 14, 2005 through September 13, 2005). See Phelps affidavit, ¶¶ 2-3. After that time, commissions paid on sales (from which plaintiff would have had to pay her own expenses) would be her only form of income from defendant. See id. Defendant has further provided the recent past and present performance of its salespersons in plaintiff's territory; the former employees working the territory plaintiff would have been assigned to would have had commissions of approximately (1) $948.56 per month from May 2004 through November 2004; (2) $704.77 per month from March 2005 through July 2005; and (3) $1,128.08 from January 2006 until May 2006. See id. at ¶¶ 5-7. Ms. Phelps estimates that, based on past practices, had plaintiff remained with the company past her probationary period, she would have earned approximately $1,000 per month in commissions. Id. ¶ 8. Defendant estimates that, from September 13, 2005 (the end of what would have been plaintiff's probationary period) through June 6, 2006 (the date plaintiff filed her complaint), plaintiff would have earned around $9,000. Thus, defendant claims that plaintiff's damages for lost wages could only account for, at the most, $29,000 towards the amount in controversy.[2] In her response, plaintiff does not challenge defendant's calculation of her wage-related damages.

Defendant further notes that plaintiff's claims for attorneys' fees and expenses should not substantially add to the amount in controversy, as plaintiff can only count those attorneys' fees and expenses incurred up until the filing of her complaint. Gardynski-

---

[2]Defendant further notes that plaintiff's wage-related damages may be substantially less if she mitigated her losses by accepting other employment. For purposes of this motion, however, the Court will assume that plaintiff would be entitled to the maximum amount presented in defendant's motion.

5

Leschuck v. Ford Motor Co., 142 F.3d 955, 958-59 (7th Cir. 1998); Steel Co. v. Citizen for a Better Env't, 523 U.S. 83, 107 (1998).  Defendant states that, given plaintiff's brief seven-paragraph complaint, plaintiff surely has not incurred attorneys' fees sufficient to reach the $75,000 amount in controversy requirement.  Again, in her response, plaintiff does not challenge defendant's assertion that her attorneys' fees cannot be large enough to reach the statutory amount in controversy.

Defendant finally notes that plaintiff has made no claim for punitive damages, and although she says she suffered emotional distress as a result of defendant's actions, plaintiff has not included a request for emotional distress damages in her prayer for relief. Defendant states that pursuant to Fed. R. Civ. P. 8(a)(3), plaintiff is required to make a demand for judgment for the relief the pleader seeks, and that plaintiff has not adequately requested emotional distress damages.  Defendant states further that plaintiff has not pled any facts showing an entitlement to emotional distress or punitive damages.

In response to this issue, plaintiff notes that under R.S.Mo. § 213.111.2, a defendant can be held liable for all actual and punitive damages caused by defendant's discrimination, and that actual damages include emotional distress damages.  Plaintiff further notes that an employee who prevails in an employment discrimination claim under the Missouri Human Rights Act ("MHRA") can recover emotional distress damages without having to prove medically diagnosable emotional distress.  See Conway v. Missouri Commission of Human Rights, 7 S.W.3d 517, 535 (Mo. App. E.D. 1999) (wherein plaintiff was awarded $3,000 for emotional distress).  Plaintiff provides an affidavit, stating that she "has in the past and still does in the present to some extent felt depressed, being unable to sleep, feeling worthless, not wanting to socialize, feeling helpless and powerless, and suffering from bouts of weeping . . . . [Plaintiff] has considered seeking medical help but now being without medical insurance and without a substantial income has attempted to handle the situation by herself including using over the counter medication." See Doc. No. 13, Ex. 2,

6

¶¶ 17 and 19. Plaintiff further indicates that "due to the financial and emotional strain," her marriage engagement was broken off, she and her son had to move back to Nebraska, and she had to sell some of her horses. See id., ¶¶ 20, 22, 23. Plaintiff states that she is afraid that at her age (50), she will only be able to "find work like cattle pen riding, mowing, cleaning houses, arena work, etc [sic] which exacerbates her fear that she is going to end up waiting tables at 60 years old just to provide a minimal living." See id., ¶ 25. Plaintiff concludes, stating that she "believes that her emotional damages exceed $100,000.000 [sic]." Id., ¶ 26.

Defendant replies in part that (1) plaintiff has not alleged in her complaint specific facts as to the nature of her emotional distress and the causal connection to defendant's conduct, and (2) plaintiff has not provided any evidence of other factually analogous failure to hire cases where juries have awarded emotional distress damages significant enough to meet the jurisdictional minimum in this matter.

The Court finds defendants arguments to be persuasive. In particular, in almost all the cases cited by plaintiff in support of the proposition that she could be entitled to emotional distress damages without any medical treatment or medically diagnosable condition, the plaintiffs received less than $10,000 in emotional distress or humiliation damages. See Van Den Berk v. Missouri Commission on Human Rights, 26 S.W.3d 406, 413 (Mo. App. E.D. 2000) (awarding total damages, including emotional distress damages, of $8,000 to plaintiffs who made a claim for racial discrimination in housing); Conway v. Missouri Commission of Human Rights, 7 S.W.3d 517, 535 (Mo. App. E.D. 1999) (awarding $3,000 in emotional distress damages to plaintiff who made a claim for racial discrimination in the workplace); and Missouri Commission on Human Rights v. Red Dragon Restaurant, Inc., 991 S.W.2d 161, 170 (Mo. App. W.D. 1999) (awarding $300 in damages for deprivation of civil rights to plaintiff who made a claim for disability discrimination in restaurant accommodations).

Further, the facts as presented by plaintiff Eidson differ substantially from reported MHRA cases in which plaintiffs have been awarded emotional distress damages exceeding the approximately $40,000 plaintiff would need to meet the jurisdictional minimum. See, e.g., Rowe v. Hussman Corp., 381 F.3d 775 (8th Cir. 2004) (affirming an award of $500,000 in emotional distress damages in sexual harassment case where plaintiff was subjected to repeated abusive behavior in the workplace (including threats of murder and rape by a co-employee if plaintiff reported his behavior), defendant did not adequately or timely address the behavior, and plaintiff's treating physician had diagnosed her with anxiety disorder); Thorne v. Welk Inv., Inc., 197 F.3d 1205 (8th Cir. 1999) (affirming a compensatory damages award of $135,000 (including emotional distress damages) where plaintiff was subjected to repeated sexually suggestive comments by her employer, was fired shortly after making a complaint with the EEOC, and sought psychological treatment); and Morse v. Southern Union Co., 174 F.3d 917 (8th Cir. 1999) (affirming an award for $70,000 in emotional distress damages in age discrimination claim where plaintiff was fired after 30 years of employment and forensic psychologist testified that plaintiff suffered from major depression as a result of losing his job).

Accordingly, given the facts alleged by plaintiff, the Court finds that a fact finder could not legally conclude that the damages plaintiff suffered are greater than $75,000. In the Court's estimation, it appears to a legal certainty that the claim is really for less than the jurisdictional amount. Therefore, defendant's motion to dismiss for lack of federal jurisdiction (Doc. No. 7) will be **GRANTED.**

    C.    <u>Defendant's Request for Dismissal Pursuant to Rule 12(b)(6) or, in the alternative, Request for More Definite Statement Pursuant to Rule 12(e)</u>

As the Court finds defendant's motion to dismiss for lack of federal jurisdiction should be granted, the Court does not reach the issue of whether plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted, or whether plaintiff should be required to file a more definite statement.

### III.     Plaintiff's Motion for Leave to Amend Complaint (Doc. No. 16)

As plaintiff's claims have been dismissed for lack of federal jurisdiction, the Court does not reach the issue of whether plaintiff should be allowed leave to amend her complaint. Therefore, plaintiff's motion for leave to amend complaint (Doc. No. 16) is **DENIED AS MOOT.**[3]

**IT IS SO ORDERED.**

          /s/ FERNANDO J. GAITAN, JR.
Fernando J. Gaitan, Jr.
United States District Judge

Dated:    October 25, 2006    .
Kansas City, Missouri.

---

[3] Even if the Court had reached this issue, plaintiff's proposed amendment to add a fraudulent misrepresentation claim would likely be futile, given Missouri's employment-at-will doctrine. See Rosatone v. GTE Spring Communications, 761 S.W.2d 670 (Mo. App. 1988).

9